# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# NORTHERN DIVISION
# COVINGTON

Civil Action No. 10-157-HRW

BARBARA MONHOLLEN,                                        PLAINTIFF,

v.                 **MEMORANDUM OPINION AND ORDER**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,          DEFENDANT.

Plaintiff has brought this action pursuant to 42 U.S.C. §405(g) to challenge a final decision of the Defendant denying Plaintiff's application for disability insurance benefits. The Court having reviewed the record in this case and the dispositive motions filed by the parties, and being otherwise sufficiently advised, for the reasons set forth herein, finds that the decision of the Administrative Law Judge is supported by substantial evidence and should be affirmed.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed her current application for disability insurance benefits on May 8, 2006, alleging disability beginning on May 5, 2006, due to bilateral recurrent shoulder dislocations and epilepsy (Tr. 102). This application was denied initially and on reconsideration (Tr. 48-49).

On May 17, 2009, an administrative hearing was conducted by Administrative Law Judge Timothy Keller (hereinafter "ALJ"), wherein Plaintiff, accompanied by counsel, testified. At the hearing, Sally Moore, a vocational expert (hereinafter "VE"), also testified.

At the hearing, pursuant to 20 C.F.R. § 416.920, the ALJ performed the following five-step sequential analysis in order to determine whether the Plaintiff was disabled:

> Step 1: If the claimant is performing substantial gainful work, he is not disabled.
>
> Step 2: If the claimant is not performing substantial gainful work, his impairment(s) must be severe before he can be found to be disabled based upon the requirements in 20 C.F.R. § 416.920(b).
>
> Step 3: If the claimant is not performing substantial gainful work and has a severe impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and his impairments (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is disabled without further inquiry.
>
> Step 4: If the claimant's impairment (or impairments) does not prevent him from doing his past relevant work, he is not disabled.
>
> Step 5: Even if the claimant's impairment or impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

2

On March 25, 2009, the ALJ issued his decision finding that Plaintiff was not disabled (Tr. 38-47).

Plaintiff was 39 years old at the time of the hearing decision (Tr. 35). She has a high school education (Tr. 1-2-104). Her past relevant work experience consists of work as a daycare and early childhood education teacher and meat wrapper (Tr. 134-141).

At Step 1 of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability (Tr. 40).

The ALJ then determined, at Step 2, that Plaintiff suffers from epilepsy and recurrent bilateral shoulder dislocations, which he found to be "severe" within the meaning of the Regulations (Tr. 40-41).

At Step 3, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the listed impairments (Tr. 41). In doing so, the ALJ specifically considered listings 11.02 and 11.03 (Tr. 41).

The ALJ further found that Plaintiff perform her past relevant work as a meat wrapper (Tr. 45-46) and further determined that she has the residual functional capacity ("RFC") to perform a range of sedentary work, with certain restrictions as set forth in the hearing decision (Tr. 43-45).

3

The ALJ finally concluded that these jobs exist in significant numbers in the national and regional economies, as identified by the VE (Tr. 46-47).

Accordingly, the ALJ found Plaintiff not to be disabled at Steps 4 and 5 of the sequential evaluation process.

The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the final decision of the Commissioner on May 15, 2010 (Tr. 1-5).

Plaintiff thereafter filed this civil action seeking a reversal of the Commissioner's decision. Both parties have filed Motions for Summary Judgment [Docket Nos. 11 and 14] and this matter is ripe for decision.

### III. ANALYSIS

#### A. Standard of Review

The essential issue on appeal to this Court is whether the ALJ's decision is supported by substantial evidence. "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). If the Commissioner's decision is supported by substantial evidence, the reviewing Court must affirm. *Kirk v. Secretary of Health*

4

*and Human Services*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). "The court may not try the case *de novo* nor resolve conflicts in evidence, nor decide questions of credibility." *Bradley v. Secretary of Health and Human Services*, 862 F.2d 1224, 1228 (6th Cir. 1988). Finally, this Court must defer to the Commissioner's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

**B.    Plaintiff's Contentions on Appeal**

Plaintiff contends that the ALJ's finding of no disability is erroneous because: (1) the ALJ did not properly weigh the opinion of treating physician Dr. John Larkin;  (2) the ALJ did not properly assess her credibility and (3) the hypotheticals posed to the VE were flawed.

**C.    Analysis of Contentions on Appeal**

Plaintiff's first claim of error is that the ALJ did not properly weigh the opinion of treating physician Dr. John Larkin.

In this case, the ALJ gave great weight to Dr. Larkin's June 25, 2007 opinion that Plaintiff was capable of pushing and pulling ten pounds and lifting five pounds repetitively, which he acknowledged was "sedentary work," but she

5

could not perform "above shoulder type of work" (Tr. 324). The ALJ adopted these restrictions in the RFC (Tr. 41, 288-94, 296-302). Indeed, Dr. Larkin noted it was a "good idea" for Plaintiff to return to work (Tr. 318, 765).

Plaintiff, however argues that Dr. Larkin's opinion should be *discounted* because it does not reflect any deterioration or worsening of her shoulder impairment. However, a review of the record clearly shows that Dr. Larkin's opinion is valid.

Dr. Larkin noted that Plaintiff's shoulder dislocations were "recurrent" on several occasions prior to issuing his June 25, 2007 opinion; thus, this characterization of her condition after June 2007 is not an indication that her condition worsened (Tr. 282, 308, 322-23). Further, Dr. Larkin's notes reflect that only a week before he issued his opinion, Plaintiff reported to him that subsequent to her September 2006 surgery she had dislocated her left shoulder six to seven times (Tr. 322). Thus, Plaintiff's recurrent shoulder instability was not a new development (Tr. 324). Moreover, a week prior to the opinion, Dr. Larkin referred Plaintiff to Dr. Wyrick for a second opinion prior to undergoing additional surgery (Tr. 323). Accordingly, the fact that Plaintiff later saw two physicians who recommended surgery does not indicate that Plaintiff's condition had worsened subsequent to Dr. Larkin's opinion. The Court finds that his opinion was

reflective of Plaintiff's condition at the time the ALJ rendered his decision.

Plaintiff's second claim of error is that the ALJ did not properly assess her credibility.

Upon review of an ALJ's decision, this Court is to accord the ALJ's determinations of credibility great weight and deference as the ALJ has the opportunity of observing a witness' demeanor while testifying. *Walters v. Commissioner of Social Security*, 127 F.3d 525, 528 (6th Cir. 1997). This Court's evaluation is limited to assessing whether the ALJ's conclusions are supported by substantial evidence on the whole record. Further, subjective claims of disabling impairment must be supported by objective medical evidence. *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 852-853 (6th Cir. 1986). Based upon the record, Plaintiff's subjective complaints do not pass *Duncan* muster.

While the record establishes that Plaintiff suffers from a seizure disorder, the evidence does not support the her claim of disabling impairment stemming therefrom. For example, in February 2008, Plaintiff was involved in a motor vehicle accident subsequent to a seizure. However, upon admission to the hospital, Plaintiff admitted that she may have "missed" a dose of seizure medication, and records suggest that transitioning her medications, not sleeping

well, and taking Tamiflu may have contributed to the "breakthrough seizure" (Tr. 494, 498). The record does not reflect any hospital visits for seizures after that episode. Accordingly, the evidence, including Plaintiff's sporadic emergency treatment for epilepsy, shows that her seizures were generally well-controlled by medication when she took it as prescribed, and thus her conditions were not disabling. See 20 C.F.R. §§ 404.1527(d)(4), 404.1529(c)(3)(iv).

Nor does the record support Plaintiff's claim of disabling shoulder problems. The record suggests that she did not comply with her doctor's instruction that she attend therapy sessions, though he repeatedly stressed the importance of therapy (Tr. 44, 311, 316, 319-20). See 20 C.F.R. §§ 404.1527(d)(4), 404.1529(c)(3)(v), (4); *see also* 20 C.F.R. § 404.1530 (concerning importance of following prescribed treatment).

Additionally, substantial evidence supports the ALJ's determination that Plaintiff's daily activities indicated she was not as impaired as she alleged. As the ALJ noted, although Plaintiff was diagnosed with epilepsy over twenty years prior to her application and had her first shoulder surgery in 1994, Plaintiff worked full time in a daycare from 1989 to 1994 and as a meat wrapper from 2000 to 2006 (Tr. 19, 21-22, 134-36). Plaintiff's ability to work for years despite her conditions undermines her allegations that they were disabling.

8

Finally, Plaintiff's own testimony was riddled with contradiction regarding the extent of her limitations. when asked at the hearing whether she intended to have the surgery, she first stated that she could not afford physical therapy, but later stated that she was undecided because she was fearful, as it was "not [a] guaranteed fix" (Tr. 17-18). By contrast, Dr. Wyrick's notes reflect that Plaintiff told him she did not want to proceed with further surgery until her father, who had terminal cancer, was "more stable" (Tr. 431, 762). Also, when the ALJ asked Plaintiff to what extent she was "having to take care of her father" as Dr. Wyrick noted, Plaintiff minimized her involvement in the care of her father, who lived "about a block away," insisting that she only "s[at] with him while [her] mother [went] to the grocery store and things like that" (Tr. 15, 431). Despite notes from Plaintiff's physicians indicating that Plaintiff had stated that her father's cancer was "terminal," "metastatic," and at the "end stage," she testified that he had "liver cancer, but he [was] not bedridden or anything like that;" he was "just under chemotherapy" (Tr. 15, 431, 464, 761).

Given the lack of supporting medical evidence and Plaintiff's own contradictory statements, the Court finds no error in the ALJ's determination of Plaintiff's credibility.

Finally, Plaintiff takes issue with the testimony of the VE.

First, Plaintiff contends the DOT description the VE cited as descriptive of her past relevant work "requires frequent reaching which *could* be contraindicated by the hypothetical question posed by the ALJ when he limited her to no above shoulder work." [Pl.'s Memo. at 19]. However, the VE testified that, given the restrictions the ALJ posed, which included no reaching above shoulder level, Plaintiff would be able to perform her past relevant work as a meat wrapper (Tr. 29). Plaintiff has not shown that the meat wrapper job required reaching above shoulder level. Thus, nothing in the VE's testimony or the DOT indicates an conflict exists between the demands of her past relevant work and Plaintiff's exertional limitations.

Further, Plaintiff maintains that her counsel was precluded from fully questioning the VE. She argues that it was error for the ALJ to instruct her counsel to pose questions to the VE in the form of hypotheticals setting forth specific limitations, rather than ask the VE to deduce limitations from Plaintiff's testimony (Tr. 31-33). [Pl.'s Memo. at 15-16, 18.] However, VEs testify regarding the existence of jobs based on a claimant's age, education, work experience, and RFC. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004). VEs do not evaluate a claimant's impairments or

determine a claimant's resulting limitations. That is the duty of the ALJ. Thus, the ALJ properly instructed Plaintiff's counsel to "give restrictions that [he] believe[d] were] appropriate" to the VE, rather than ask her to accept Plaintiff's limitations "to the extent and the degree that she testified to" (Tr. 31-32).

The Court finds that the hypothetical posed to the VE accurately portrayed the claimant's abilities and limitations, as required by *Varley v. Secretary of Health and Human Services*, 820 F.2d 777 (6th Cir. 1987) and its progeny. This rule is necessarily tempered by the requirement that the ALJ incorporate only those limitations which he or she finds to be credible. *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1235 (6th Cir. 1993).

### III. CONCLUSION

The Court finds that the ALJ's decision is supported by substantial evidence on the record. Accordingly, it is **HEREBY ORDERED** that the Plaintiff's Motion for Summary Judgment be **OVERRULED** and the Defendant's Motion for Summary Judgment be **SUSTAINED**. A judgment in favor of the Defendant will be entered contemporaneously herewith.

This 16th day of August, 2011.



Henry R. Wilhoit, Jr., Senior Judge